POTTS, APPELLEE, *v.* THE TRAVELERS INS. CO.,
APPELLANT.

(No. 477—Decided July 8, 1944.)

402

*Messrs. Woolley & Rowland* and *Mr. Paul M. Herbert,* for appellee.

*Messrs. Jones & Williams,* for appellant.

GILLEN, J. This appeal upon questions of law is from a judgment of the Court of Common Pleas of Athens county, Ohio, rendered in favor of plaintiff, appellee herein, in the sum of $3,000 on a contract of group life insurance. The cause was submitted upon plaintiff's amended petition, defendant's second amended answer and plaintiff's amended reply. The pleadings contain three pertinent issues as follows:

1. Plaintiff alleges that he was injured on the 17th day of October, 1935. Defendant admits this fact but denies the nature and extent of such injury.

2. Plaintiff further alleges that he became permanently and totally disabled on February 20, 1940, which allegation is denied by defendant.

3. Plaintiff also alleges that due proof of notice in conformity with the provisions of the policy was given to the defendant. Defendant not only denies this allegation but avers that such notice was not given within a reasonable time after February 20, 1940, and was not given during the time the policy of insurance was in effect.

The record discloses that plaintiff's employment with The F. C. Stedman Company began in the year 1924 and continued until the latter part of September, 1941. On the 17th day of October, 1935, plaintiff was injured in the course of his employment when his head was caught between a gate bar on the elevator shaft and a descending elevator. According to the testimony of the attending physician his injuries consisted of a lacerated wound under the chin about four inches long, a lacerated wound on the top of his head about

four and one-half inches long and a depressed linear skull fracture near the occipital region. After a period of three or four months plaintiff returned to his employment but found it difficult to perform his usual duties. Other employees assisted him in his work and occasionally he would be sent home for rest. His wages were paid regularly even though he did not perform as much work as he did prior to the accident. His condition became progressively worse and in February, 1940, he began to receive special treatment. However, he had been under the care of a physician, more or less, ever since the day of the original injury.

Dr. Hutchinson, who examined plaintiff about the 20th day of February, 1940, diagnosed the case as post traumatic epilepsy. This witness testified that at the time of his diagnosis on February 20, 1940, plaintiff was totally and permanently disabled. In March, 1940, plaintiff was referred for an encephalelographic study of his skull to Dr. LeFever, a specialist in neuro-surgery, and in April was referred to Dr. Secrest, a specialist in neuro-surgery, for further observation and diagnosis. The testimony of both these experts was substantially the same as that given by Dr. Hutchinson with respect to the nature of plaintiff's disability and the extent thereof.

Plaintiff continued his employment with The F. C. Stedman Company until the 27th day of September, 1941, when he became unconscious while working and was taken to a hospital where he regained consciousness some time later. It was not until then that he was apprised of his real condition by his attending physician. He had encountered considerable difficulty performing his work, however, and received a great deal of help from his fellow employees. His employer paid him for straight time even during the time he was in Columbus for observation and treatment.

Shortly after plaintiff was apprised of his true condition by his physician he consulted an attorney concerning his rights under the policy of insurance involved in this litigation. The attorney forthwith notified the local representative of the insurance company that he desired to file a claim for plaintiff for total and permanent disability. Shortly thereafter plaintiff was visited by a representative of the insurance company who took a history of the case. The following month, January, 1942, another representative visited plaintiff's attorney and gave him forms to be filled out which appear in the record as exhibits 3A, 3B and 3C. These forms were filled out by the physicians and mailed by plaintiff's attorney to the defendant about February 12, 1942.

The contract of group insurance was entered into by and between The F. C. Stedman Company and defendant on the 11th day of April, 1921, and continued in force and effect until the date of its cancellation on April 1, 1941. The certificate of insurance under this policy was issued to plaintiff on February 20, 1925, the pertinent provisions of which policy are as follows:

"If any employee insured under this contract shall furnish the company with due proof that he has before having attained the age of sixty become wholly disabled by bodily injury or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wages or profit, the company will pay to him in full settlement of all obligations due him hereunder the amount of insurance then effective on his life either in a single payment or in annual installments as hereinafter set forth.

"Termination of insurance:—The insurance of each employee covered hereunder shall end when he shall leave the service of the assured or be dismissed there-

from, except in the event that he shall leave the service because of physical disability.''

It is strongly urged by counsel for defendant that, since the insurance policy had been cancelled on April 1, 1941, no insurance was in effect at the time plaintiff filed his proof of claim on February 12, 1942. It is the claim of plaintiff, however, that his total and permanent disability existed on February 20, 1940, at which time the insurance was in full force and effect. Defendant further contends that, even though plaintiff's claim with respect to this matter be correct, the proof of claim was not filed within a reasonable time after the existence of such disability. The provisions of the contract do not specify any time within which proof of claim is to be filed nor is there any forfeiture provision bearing upon this subject. It is said in 22 Ohio Jurisprudence, 731, Section 631, that:

''If the contract of insurance does not specify the time within which notice or proofs of loss must be given or made, time is not of the essence of the contract, and a reasonable time is allowed; and what constitutes a reasonable time will depend upon the particular facts and circumstances of each case.'' See, also, 29 American Jurisprudence, 827, Section 1104.

It has been said in the case of *Employers' Liability Assurance Corp.* v. *Roehm*, 99 Ohio St., 343, 124 N. E., 223, 7 A. L. R., 182:

''A provision in a policy of indemnity insurance, to the effect that written notice should be given the company within 30 days from the date of sustaining the injury, is of the essence of the contract, and like other contracts should be construed so as to give effect to the intention and express language of the parties. This rule of law is subject to the qualification, that if at the time of the accident, and within the period stipulated for the giving of notice, no reasonable ground

existed warranting a belief that the injury was anything but trivial in its character, not justifying a claim for damages, and it subsequently develops that as a result of such accident serious consequences have ensued, and that immediately upon being advised of this fact the insured gives written notice to the insurer, the question whether the notice was given within time is not a matter of law, but is a question for the determination of a jury.''

In the instant case the circumstances were such as to warrant the trial court in submitting the question of the reasonableness of the time, within which the plaintiff filed his proof of claim, to the jury for determination. Plaintiff's condition, both physical and mental, as described by the medical experts, had grown progressively worse and his state of mind was such that he did not appreciate his true condition until he was advised of it by Dr. Hutchinson in October, 1941. Certainly the terms of the policy of insurance did not require him to file proof of his total and permanent disability until after he was aware of the existence of such disability. It is said in 29 American Jurisprudence, 834, Section 1111, that:

''It is generally held that provisions requiring the insured to give notice or furnish proofs of loss do not apply until the insured has knowledge of the loss. * * * Similarly, under a policy requiring one claiming sick benefits to give notice 'within ten days from the commencement of total disability,' the time limited does not commence to run until he realizes that his illness is sufficiently serious to prevent him from following his usual vocation. Notice immediately given upon the discovery of such serious condition is seasonable.''

In the instant case plaintiff, through his attorney, notified the local representative of defendant that a claim for permanent and total disability would be

filed. Thereafter a representative of the insurance company called upon the attorney and left blanks to be filled out. The proofs of claim were prepared and forwarded to defendant and were received without objection. Certainly evidence adduced to establish these facts, as bearing upon the reasonableness of the time within which the proof of claim was filed, was admissible. It is said in 29 American Jurisprudence, 857, Section 1140:

"However, if an insurer sends a blank form of proofs of loss after the expiration of the time within which such proof was required by the policy to be made, and thereafter receives without objection the proofs made upon such blank, it waives the failure to make such proof in time."

The record in the case at bar contains positive testimony to the effect that plaintiff was suffering total and permanent disability on February 20, 1940. This situation, however, presented an issue of fact to be determined by the jury. It is urged that since plaintiff continued to work at his usual occupation until September, 1941, he is precluded as a matter of law from claiming the existence of total and permanent disability on the 20th day of February, 1940. Under all the circumstances as established by the evidence we consider this issue to be one of fact rather than of law. While it is true that plaintiff continued to work and receive compensation therefor it is also true as shown by the evidence that his ability to perform his usual duties was greatly impaired. The sympathy of his employer and the help he received from his fellow employees made it possible for him to continue his work. Futile attempts to carry on one's business or occupation do not disprove total disability. See 29 American Jurisprudence, 873, Section 1161. It has been said in the case of *Hayes* v. *Prudential Ins. Co.*, 114 W. Va.,

323, 171 S. E., 824, that evidence of an attempt by a bank cashier, suffering from severe heart trouble to return to work, which attempt had to be abandoned, does not negative total disability.

It is strongly urged that the trial court incorrectly defined the term "total and permanent disability" and that the instruction given in respect to this subject ignored the rule laid down by the Supreme Court of Ohio in the case of *Gibbons* v. *Metropolitan Life Ins. Co.*, 135 Ohio St., 481, 21 N. E. (2d), 588. A careful examination of the charge reveals that the trial court did not broaden the definition of the term "total and permanent disability" as that term has been defined in the *Gibbons case, supra*. In a more recent decision in the case of *Stuhlbarg* v. *Metropolitan Life Ins. Co.*, 143 Ohio St., 390, 55 N. E. (2d), 640, the court clearly and definitely defined the term "permanent disability" as used in a disability insurance policy providing for payments to one who has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit. The court said in the fourth paragraph of the syllabus of that case:

"Under the terms of a disability insurance policy providing compensation in case of total disability, the test of the insured's ability to perform any labor for compensation is not limited strictly to the occupation or vocation in which the insured may be engaged at the time his disability accrued, but extends to any comparable employment for which the insured is fitted by education, experience and physical condition."

This pronouncement has since been approved and followed in the case of *Blumenthal* v. *Metropolitan Life Ins. Co.*, 143 Ohio St., 464, 55 N. E. (2d), 803, wherein the court said:

" 'Due proof' of total and permanent disability re-

quires only *prima facie* evidence of such disability, and does not require such certainty of proof of total and permanent disability as is required in the proof of such a claim in an action at law in case the claim is rejected by the insurer.''

In the light of these recent decisions we are of the opinion that the trial court in the case at bar correctly explained the meaning of the term "total and permanent disability" as it was used in the contract of insurance under consideration.

It is said in 22 Ohio Jurisprudence, 775, Section 669, that:

"It may be said, however, that the courts tend to liberality of construction, and that such provisions as a whole do not require absolute physical helplessness; rather, that substantial inability to perform the duties or labors which are material, substantial, and necessary to be done, or usual in the business in which the insured is engaged, is sufficient."

Under the terms of the contract of insurance defendant's liability attached at the time plaintiff became totally and permanently disabled provided the policy was in force and effect at the time. The fact that the contract of insurance was cancelled by defendant subsequent to the time that plaintiff became totally and permanently disabled and prior to the time defendant received proof of such disability did not necessarily remove this liability.

The complaint directed to the admission of evidence bearing upon plaintiff's original injury and the manner in which it was received is without merit. The jury was entitled to have a full disclosure of all facts bearing upon plaintiff's disability and the extent thereof. The cause of such disability and the unusual consequences resulting therefrom constitute the basis for plaintiff's claim in this action.

We have carefully examined the entire record and have considered each specification of error urged by defendant (appellant). We have reached the conclusion that the record is free from prejudicial error and that the judgment of the trial court should be affirmed. Judgment will, therefore, be affirmed.

*Judgment affirmed.*

McCurdy, P. J., and Metcalf, J., concur.